**Randy L. TIESZEN, Employee, Claimant and Appellant,**

v.

**JOHN MORRELL & CO., Employer, Self Insurer and Appellee.**

No. 18544.

Supreme Court of South Dakota.

Considered on Briefs Sept. 13, 1994.

Decided March 8, 1995.

Robert M. Nash of Wilson, Olson, Nash, Becker & Smoot, P.C., Rapid City, for claimant and appellant.

David J. Vickers of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for employer, self insurer and appellee.

VON WALD, Circuit Judge.

Randy L. Tieszen (Tieszen) appeals adverse determination of worker's compensation benefits. We reverse and remand.

### FACTS

Tieszen first became employed for John Morell & Company (Morrell) in May 1987 as a strike replacement worker. He left Morrell in July 1987 because of threats made on his life by striking workers. Tieszen was rehired by Morrell on August 12, 1987, and he was assigned to the pork kill area of the plant as a hog splitter, which was the same type of work that he had performed at Morrell during his previous employment by them.

In September of 1987, Tieszen first began experiencing problems with his left hand and wrist. On September 18, 1987, he reported to the first aid station at Morrell complaining of numbness in his left hand and wrist. According to Tieszen's testimony, he also men-

tioned to the nurse that he was having soreness in his neck, shoulder, and back, but the records of the first aid department do not reflect any report of those injuries.

After the nurse at the first aid station examined Tieszen, he was given a splint to wear for his hand, and he was assigned to light duty work, including janitorial and cleaning responsibilities, for a period of time. It is not clear how long Tieszen's light duty work lasted, although he had returned to hog splitting shortly thereafter. On Saturday, November 28, 1987, while at work, Tieszen informed a Morrell supervisor that he needed to take some time off to "heal up." That was the last day Tieszen worked for Morrell.

On the following Wednesday, December 2, 1987, Tieszen reported to the first aid station at Morrell. He testified that he complained of his left hand and wrist and his neck, shoulder, and back. However, the written records of the first aid department show only that he complained of pain and numbness in his left hand and wrist. At this visit, Morrell's first aid station personnel instructed Tieszen to go to Central Plains Clinic for examination. Tieszen saw Gary Wurgler, Dr. Guy Tam's physician assistant, on that same day. Wurgler's notes indicate possible early "trigger finger", and instructed Tieszen to return to the clinic in one week.

Tieszen saw Dr. Tam himself on December 9, 1987, for his scheduled appointment. Dr. Tam's notes indicate that Tieszen, "comes in today for follow up on tendinitis of his left wrist and hand and this is markedly improved. However, he has not been working since last Thursday because of pain in the left shoulder and neck. Has been to a chiropractor." Dr. Tam's notes also indicate that he felt Tieszen was suffering from a muscle strain in his neck and left shoulder, probably as a result of using the splitter saw. Dr. Tam subsequently made a report to Morrell which contained the findings of his December 9 visit with Tieszen. The doctor's reports to Morrell also instructed them to take Tieszen off the splitting saw, and he ordered physical therapy for Tieszen.

## PROCEDURAL HISTORY

Tieszen filed a petition for hearing with the South Dakota Department of Labor, Division of Labor and Management, claiming worker's compensation benefits due him as a result of injuries sustained arising out of employment with Morrell. At the conclusion of the hearing, the Department ruled that all claims relating to Tieszen's neck, back, and shoulder were barred by his failure to comply with the notice requirements of SDCL 62–7–10. The Department then dismissed Tieszen's petition for hearing at the conclusion of the hearing.

Tieszen appealed to the Butte County Circuit Court where the case was considered on briefs and without oral argument by the Honorable Robert L. Tschetter. Judge Tschetter issued his letter decision on August 25, 1993, affirming the Department's order of dismissal. An order of affirmance was entered, nunc pro tunc, on September 14, 1993. Tieszen's appeal to this Court from that order of affirmance followed with the filing of his notice of appeal on November 16, 1993.

## ISSUE

DID THE DOCTORS REPORT SENT TO MORRELL ON DECEMBER 9, 1987, CONSTITUTE TIMELY NOTICE OF TIESZEN'S BACK, NECK AND SHOULDER INJURY AS REQUIRED BY SDCL 62–7–10?

## STANDARD OF REVIEW

The standard of review applicable to the Supreme Court is controlled by SDCL 1–26–36. The Supreme Court makes the same review of the administrative agency's decision as did the circuit court, unaided by any presumption that the circuit court's decision was correct. *Appeal of Templeton*, 403 N.W.2d 398 (S.D.1987). When the issue is a question of fact, the actions of the agency are judged by the clearly erroneous standard. *Application of Northwestern Bell Telephone Co.*, 382 N.W.2d 413 (S.D.1986). When the issue is a question of law, the actions of the agency are fully reviewable. *Matter of State & City Sales Tax Liability*, 437 N.W.2d 209 (S.D.1989). Mixed questions of law and fact

are also fully reviewable. *Permann v. Dept. of Labor, Unemp. Ins. D.,* 411 N.W.2d 113 (S.D.1987).

## DECISION

The Department held that Tieszen failed to give notice of his injury as required by SDCL 62-7-10, and Tieszen's claim was dismissed. SDCL 62-7-10 provides:

Every injured employee or his representative shall immediately upon the occurrence of an injury or as soon thereafter as practicable give or cause to be given to the employer written notice of the injury and the employee shall not be entitled to a physician's fee nor to any compensation which may have accrued under the terms of this title prior to the giving of such notice, unless it can be shown that the employer, his agent, or representative had knowledge of the injury or death, or that the person required to give such notice had been prevented from doing so by reason of physical or mental incapacity or the fraud or deceit of some third person or other equally good reason; but no compensation shall be payable unless written notice is given within thirty days after the occurrence of the injury or death unless reasonable excuse is made to the satisfaction of the department for not giving such notice.

The purpose of the notice is to give the employer an opportunity for investigation of the accident and injury while the facts are accessible and provide them an opportunity to determine whether the injury is work related. *Schindler v. Manchester Biscuit Co.,* 71 S.D. 336, 24 N.W.2d 76, 76 (1946) (citing *Wilhelm v. Narregang-Hart Co.,* 66 S.D. 155, 279 N.W. 549 (1938)). The question of whether an employee had sufficient knowledge of a compensable injury to start the running of the notice period is a question of law. *Bearshield v. City of Gregory,* 278 N.W.2d 164, 165 (S.D.1979); *Croft v. John Morrell & Co.,* 451 N.W.2d 501 (Iowa App. 1989).

This Court has had occasion to determine the timeliness of an employee's notice to her employer on a previous occasion in *Pirrung v. American News Company,* 75 S.D. 444, 67 N.W.2d 748 (1954). The employee in that case failed to report an injury to her back when she first began experiencing some symptoms on December 24, 1952. She saw a physician shortly afterward, but it was not until February 2, 1953, when a correct diagnosis was made of her back condition. In holding that the notice period did not begin to run until February 2, 1953, this Court stated that the duty of an employee to notify his or her employer of the occurrence of an injury does not arise until the employee learns that he or she has sustained a compensable injury.

A case that was somewhat similar to the one presently before the Court was *Bearshield v. City of Gregory, supra.* This Court had the task of deciding whether the employee in that case had brought his claim within two years of injury as required by statute. The Department of Labor ruled that the statute of limitations commenced to run in July 1973 when the employee began suffering from blurred vision and headaches. The circuit court reversed the Department's ruling and this Court affirmed, holding that the statute of limitations runs from the time it became apparent that a compensable injury had been sustained. This Court further stated:

As in *Pirrung,* the fact that [employee] suffered from pain and other symptoms is not the determinative factor and will not support a determination that [employee] had knowledge of the existence or extent of his injury. A claimant cannot be expected to be a diagnostician, and, while he or she may be aware of a problem, until he or she is aware that the problem is a compensable injury, the statute of limitations does not begin to run.

*Bearshield,* 278 N.W.2d at 166.

Courts in other jurisdictions have held similarly. The Iowa Court of Appeals held that where "disability was caused by a work activity which can be gradual and progressive in nature, the date of the 'injury' is the date when pain prevents the employee from continuing to work." *Croft,* 451 N.W.2d at 503 citing *McKeever Custom Cabinets v. Smith,* 379 N.W.2d 368, 375 (Iowa 1985). The court rejected the idea that "injury"

occurs when pain causes an employee to seek medical attention, stating instead that clearly the employee is disabled and injured when he or she can no longer work because of pain or physical inability.

The Iowa Court of Appeals subsequently expounded on its earlier decisions in *Venenga v. John Deere Component Works*, 498 N.W.2d 422 (Iowa Ct.App.1993). The court held that the point where the employee first stopped working was the point on which he would have been eligible for compensation benefits, and this triggered the running of the notice period. The court went on to say that more is required than knowledge of an injury or receipt of medical care; the employee must realize that the injury will have an impact on employment.

The Minnesota Supreme Court had an opportunity to consider this question in *Issacson v. Minnetonka, Inc.*, 411 N.W.2d 865 (Minn.1987). That court held that, "The time period for notice or claim does not begin to run until the claimant, as a reasonable person, should recognize the nature, seriousness and probable compensable character of his injury or disease." *Id.* 411 N.W.2d at 867 (quoting 3 A. Larson, *The Law of Workmen's Compensation* § 78.41(a) (1983)). The court interpreted this to mean that the notice period commences to run from the time it becomes reasonably apparent to the employee that the injury resulted in, or is likely to cause, a compensable disability.

Similarly, the Supreme Court of Montana recently held that there is no doubt that a disability occurs only when the employee suffers a loss in the ability to engage in gainful employment. *Conn v. Quality Inn*, 242 Mont. 190, 789 P.2d 1213, 1215 (1990). The court noted that the employee knew she had been injured on the job and that the injuries affected her ability to work, but because the employee continued to work and earn undiminished wages, disability did not occur until her doctor advised her to quit, over a year after the injury occurred.

Another court to consider this question is the Missouri Court of Appeals. That court held that the statute of limitations for filing a worker's compensation claim begins to run whenever it becomes readily discoverable that a compensable injury has been sustained. *Sellers v. Trans World Airlines, Inc.*, 752 S.W.2d 413, 416 (Mo.App.1988) (citations omitted). This has been interpreted as the time when some degree of disability results which can be the subject of compensation. Mere awareness of a work related injury alone is not knowledge of a compensable injury.

Finally, the Supreme Court of Arizona held that the notice period did not begin to run where an employee had suffered an injury where the injury did not require him to miss work or cause him an economic loss. *M.M. Sundt Construction Company v. Com'n of Ariz.*, 124 Ariz. 94, 602 P.2d 475, 477 (1979). That court held that the notice period did not begin to run until the severity of the injury was medically diagnosed. *Id.*

## CONCLUSION

This Court finds that the time period in which Tieszen was to give notice began to run on November 28, 1987. This was the last day that Tieszen worked for Morrell, and at that time he was aware that his back, neck, and shoulder injuries were severe enough that he would require time off from work to let the injuries heal. Morrell received written notice of these injuries on December 9, 1987, in the form of a medical report from Dr. Tam, Morrell's own contracted physician. Therefore, we find that the thirty day notice provision of SDCL 62–7–10 was met.

The decision is reversed and remanded for proceedings consistent with this opinion.

MILLER, C.J., and SABERS and KONENKAMP, JJ., concur.

AMUNDSON, J., dissents.

VON WALD, Circuit Judge, for WUEST, Retired Justice, who was a member of the Court at the time this action was submitted and who had disqualified himself from participating therein.

AMUNDSON, Justice (dissenting).

Tieszen testified before the Department of Labor that on September 18, 1987, he sustained compensable injuries to his neck, back and shoulders while working at the Morrell

plant in Sioux Falls, South Dakota. Tieszen further testified at the hearing on March 23, 1993, that these injuries were causing him the same problems at that time as they did when originally sustained. Based on Tieszen's knowledge of his injuries, and failure to give written notice as required by SDCL 62–7–10, Department held it lacked jurisdiction and dismissed the claim. The trial court affirmed Department's decision.

Tieszen admits that he was aware that he sustained injuries on September 18, 1987. He asserts that he informed Morrells of this fact by advising Morrell's first-aid nurses two or three times of the injuries. At time of hearing, the nurses' testimony and records indicated the contrary. Whether or not Tieszen's version of the story is true, despite the fact the nurses' reports are absent of any such reference, was a credibility issue subject to Department's in-person assessment of credibility.

This court has held that deference is properly given to an agency's credibility determination regarding testimony on contested issues from witnesses. "In accordance with settled law, we give weight to Department's judgment that [Tieszen's] testimony was not believable." *Bonnett v. Custer Lumber Corp.*, 528 N.W.2d 393, —— (S.D.1995); *see Lien v. Miracle Span Corp.*, 456 N.W.2d 563, 565 (S.D.1990) (citing *application of Northwestern Bell Tel. Co.*, 382 N.W.2d 413 (S.D. 1986) ("Due regard shall be given to the opportunity of the agency to judge the credibility of the witness.")).

Furthermore, "[w]hen failure to give notice is at issue, the claimant has the burden of showing that for some good and sufficient reason, notice could not be given or that the employer possessed knowledge of the injury's occurrence." *Schuck v. John Morrell & Co.*, 529 N.W.2d 894, 898 (S.D.1995) (citing *Schindler v. Manchester Biscuit Co.*, 71 S.D. 336, 338, 24 N.W.2d 76, 77 (1946)). Reviewing Department's record of the hearing, the Administrative Law Judge specifically found Tieszen's claim failed because sufficient notice was not given upon knowledge of his injuries. The judge stated:

[T]he record is clear that no timely notice was provided for the neck, back or shoulder problems, or indeed any medical problems other than those for the hands and wrist. The only—the claimant's testimony is that that kind of information was supplied to Dr. Tam as early as September of 198[7]. However, the—the nurse's record and the doctor's record indicate[ ] that no mention was made of such complaints until December of 198[7], well past the 30–day deadline set forth in SDCL 62-7-10.

Tieszen did not claim that his condition worsened from September to December, 1987, or that he was not aware of the fact that he sustained compensable injuries until November 28, 1987. Based on this record, if Tieszen sustained injuries to his neck and back on September 18, 1987, he was obviously aware of that fact, based on his sworn testimony, and should have complied with the notice requirements of the statute. To hold that November 28, 1987, is the date when the notice period began to run in this case allows the claimant to receive a better version of the facts than he testified to under oath at time of hearing. Tieszen cannot rise above his prior testimony to now claim a better version of the facts. *Parsons v. Dacy*, 502 N.W.2d 108, 111 (S.D.1993) (citing *Dartt v. Berghorst*, 484 N.W.2d 891, 897 (S.D.1992)). I would affirm the decision of Department as the trial court did in this case and must, therefore, respectfully dissent from the majority opinion.