B. H. DAIL, d/b/a Dail Realty,
Appellant,

v.

SOUTH DAKOTA REAL ESTATE
COMMISSION, Respondent.

No. 12047.

Supreme Court of South Dakota.

Argued June 6, 1977.

Decided Sept. 16, 1977.

Ramon A. Roubideaux, Rapid City, for appellant.

William J. Srstka, Jr. of Duncan, Olinger & Srstka, Pierre, for respondent.

CHRISTENSEN, Circuit Judge.

This is an appeal from a judgment of the Circuit Court of the Seventh Judicial Circuit affirming the decision of the South Dakota Real Estate Commission (Commission) which suspended the license of the appellant for one year. The appellant claims that the trial court erred in its judgment that (1) the findings of fact of the Commission were supported by substantial evidence; (2) the constitutional rights of the appellant were violated in the proceedings and hearing before the Commission; and (3) the trial court erred in granting costs against the appellant.

In April 1972, Jasper and Ada Rioux, husband and wife, and their son-in-law,

David Gilmore (hereinafter collectively referred to as Riouxs), purchased under a contract for deed the Cedar Court Motel from Oscar and Melda (Grace) Staton. That contract provided that the Riouxs "may not assign this agreement or resell the * * * property without first obtaining the Sellers' prior written consent thereto; provided, however, that the Sellers shall not unreasonably withhold the same." On the first annual installment in September 1973, the Riouxs made only a partial payment of the principal and interest due, and in March 1974, listed the motel with B. H. Dail, doing business as Dail Realty. Although the property was shown to several parties, none was interested. In July 1974, the Riouxs asked Dail if he would buy it. On August 4, 1974, Dail entered into an agreement to purchase the Riouxs' equity in the property for $3,000 subject to the approval of the Statons. Only the sum of $50 earnest money was paid. Later, in August, Dail and the Riouxs entered into an agreement entitled "Transfer of Interest in Real and Personal Property" drafted by Dail's attorney. That agreement specified that Dail was to take possession immediately, begin operating the motel, collect the revenues therefrom, and assigned the prepaid insurance on the premises to Dail. There is no mention in this contract of its being subject to the vendor's approval, but the contract does recite that the Riouxs have received notice of default under their contract for deed and that Dail is to attempt to renegotiate the contract with the Statons to obtain better terms. It further specifies that Dail did not assume any of the obligations of the Riouxs under the contract for deed.

Dail did contact the Statons and made them an offer which was not acceptable.

It was alleged that during the period that Dail was in possession of the motel, he operated his real estate office out of the motel in violation of SDCL 36–21–31 and 36–21–32. The evidence before the Commission was the testimony of David Sieler, Staton's attorney, that he saw a sign, "Dail's Real Estate," at the motel. Sieler further testified that Dail had left the mo-

tel telephone number for him to call. There was evidence before the Commission of Dail Realty's newspaper advertisement which lists the telephone numbers of both Dail Real Estate office, as listed with the Commission, and the motel. This advertisement sought to rent units in the motel. This evidence is disputed by Dail.

On September 16, 1974, the Statons commenced a strict foreclosure action against the Riouxs and joined Dail as a defendant because he was in possession of the property. On September 27, 1974, all the parties, being represented by attorneys, entered into a stipulation releasing the other from all claims. Dail vacated the motel premises and the Statons reentered after judgment was entered.

Mrs. Staton filed a complaint with the South Dakota Real Estate Commission on January 1, 1975, alleging professional misconduct of the appellant in making harassing telephone calls concerning her consent to an assignment of the Riouxs' contract for deed, operating his real estate office at the motel, obtaining an illegal assignment of the Riouxs' contract; and upon Dail leaving the premises, the Statons found the property to be severely damaged or missing.

On January 16, 1975, Dail filed an answer to the complaint as directed by the Commission's secretary, Jack Burchill. A formal Commission complaint, as required by ARSD 20:56:06:04 then in effect, was filed on February 7, 1975, by Burchill, which set forth Mrs. Staton's complaint in full. No answer was filed to the formal complaint because the regulations, ARSD 20:56:06:08, did not require it. Formal notice of hearing in accordance with ARSD 20:56:06:06 was sent as required by ARSD 20:56:06:07. At the hearing, the Commission's attorney called as witnesses Mr. Sieler, the complainant's attorney, and Mr. Burchill. Dail, not represented by an attorney at the hearing, cross-examined the witnesses and took the stand himself. Dail called two witnesses as a part of his defense. Neither Mrs. Staton, the complainant, nor the Riouxs were called as witnesses by either party. On April 16,

1975, the Commission issued its findings of fact, conclusions of law and its decision suspending Dail's license for one year.

■ The standard for review of an administrative decision is established by SDCL 1–26–36, which states that the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact; *Valley State Bank v. Farmers State Bank*, 1973, 87 S.D. 614, 213 N.W.2d 459; *Kierstead v. City of Rapid City*, 1976, S.D., 248 N.W.2d 363; provided, however, that the court may reverse or modify the agency's decision if it, inter alia, is affected by error of law, or is unsupported by substantial evidence on the whole record.

It appears that the appellant Dail takes issue with the findings of fact IV and VIII relating to whether the transaction between Riouxs, Gilmore and himself was in violation of the contract for deed; with finding of fact V relating to moving his real estate office to the motel premises and advertising his business from that location; and with finding of fact X relating to his failure to advise the Riouxs of the legal implications of the transfer of interest to himself and his son. This leaves the question of whether the findings of fact are supported by substantial evidence and whether the findings of fact are affected by errors of law.

SDCL 1–26–1(8) states that, " 'Substantial evidence' means such relevant and competent evidence as a reasonable mind might accept as being sufficiently adequate to support a conclusion." According to McCormick on Evidence, § 352 (E. Cleary Ed., 2d Ed. 1972), substantial evidence in an administrative hearing is evidence which would justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. Such a standard measures both the quantity and quality of the evidence.

■ Substantial evidence must, of necessity, refer to evidence properly admitted. Appellant argues strenuously that much of the evidence on which the Commission's decision was based is hearsay. According to SDCL 1–26–19, irrelevant, incompetent, and immaterial evidence shall be excluded and the rules of evidence for trial of civil cases shall be followed. Hearsay evidence is inadmissible unless it is within an exception. SDCL 1–26–19 provides an exception, however, in certain situations. To come within the exception, hearsay must meet a two-pronged test: It must be probative of a fact not reasonably susceptible of proof under normal rules, and it must be of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs.

■ Finding of fact V states that Dail moved onto the motel premises and advertised his real estate office from the motel premises. Mr. Sieler testified that he had seen a sign which read "Dail Real Estate" in the window of the motel. Commission's Exhibit Number 4 was a newspaper advertisement for renting units of the motel which read "Dail Realty" and listed the motel number as well as Dail's registered office telephone number. Finally, there is Mr. Burchill's testimony concerning information Mrs. Staton had given him. This latter testimony is clearly hearsay evidence, and, therefore, not admissible. However, Sieler's testimony as to his observations and the newspaper evidence is not hearsay, and, as such, constitutes substantial evidence which is competent and admissible. The question on review is whether there is substantial evidence to support the Commission's finding. *Application of Ed Phillips & Sons Company,* 1972, 86 S.D. 326, 195 N.W.2d 400. Our review of the whole record leads us to conclude that the Commission's finding in this regard is supported by substantial evidence in view of the reliable and probative evidence submitted concerning such finding.

■ Finding of fact X states that Dail did not advise Riouxs of the legal implications and entanglements the Riouxs could be facing by assigning the contract for deed to him. The only evidence on this is the testimony of Mr. Dail and the exhibits concerning the transactions between the

Riouxs and Dail. Therefore, finding of fact X must fail because there is no substantial evidence to support it.

Findings of fact IV and VIII must be considered together. Finding of fact IV states: "Thereafter B. H. Dail attempted to have the Statons assign the contract over to him but the Statons would not do so. Regardless of this, B. H. Dail obtained an assignment of the contract on August 9, 1974." Finding of fact VIII states: "The assignment from Rioux and Gilmore to the son of B. H. Dail did not meet the requirements of the contract for deed and was in violation of the contract for deed between the Statons and Rioux and Gilmore."

Dail does not dispute any of the transactions (the purchase of their equity and the transfer of interest in real and personal property) between the Riouxs and himself. He argues only that it was not an assignment of the contract for deed and that the transactions were not in violation of the contract.

■ The contract for deed prohibited both the assignment of the contract and resale of the property. The Commission's findings speak only in terms of an illegal assignment of the contract. Dail claims the Riouxs did not assign the contract, but rather was only a sale of their equity acquired or which they would acquire in the future and that the Riouxs made an independent contract to sell the property to Dail. It would appear that Dail is correct in this regard. The Riouxs had already received notice of default from the Statons. They had an equity which they could sell subject to the terms of the contract. An independent contract to sell property is not in violation of a nonassignability clause of a contract for deed. 92 C.J.S. Vendor and Purchaser §§ 311 and 314; *Park v. McCoy*, 1922, 121 Wash. 189, 208 P. 1098. The Riouxs remained liable on the original contract for deed with the Statons, and Dail's interest could be no greater than that which Riouxs acquired from the Statons unless he could obtain an assignment of the contract for deed unto himself.

In summary, it appears that there is substantial evidence to support the finding that Dail operated his real estate office from a place other than his registered office. There is not substantial evidence to support the finding that Dail did not inform the Riouxs of the legal implications of the transactions whereby they sold their equity to him.

■ The appellant further claims that his constitutional rights of due process were violated by the Commission in its proceedings and hearing and challenges the constitutional validity of the Commission.

The Commission served upon the appellant not only the informal complaint of Mrs. Staton, but also the formal Commission complaint in which the details of her complaint were again recited and set forth the specific violations of the South Dakota statutes and the rules and regulations of the South Dakota Real Estate Commission with which he was charged. The notice of hearing set forth the date, place and time of hearing, the purpose of said hearing and again recited the specific statutes and rules with which he was charged of violating, and notified him that he may appear in person, with witnesses, with or without counsel and offer testimony rebutting the charges made against him. The affidavit of service shows mailing to the appellant, his attorney, and others.

At the hearing, he was again advised of his right to counsel if he desired but proceeded to represent himself. He was given the right to hear the witnesses against him, and to fully cross-examine them and to present his own testimony and that of his witnesses. We find nothing in the record to support his allegations of bias, prejudice or a conspiracy on the part of the Commission. As this court stated in *Clarke v. South Dakota Real Estate Com'n*, 1977, S.D., 255 N.W.2d 67, "This court has passed on the constitutionality of the Real Estate Commission's authority to handle disciplinary actions against brokers. *Gottschalk v. Hegg*, 1975, S.D., 228 N.W.2d 640."

The appellant also claims that the trial court erred in granting costs against him.

The respondent moved that the trial court enter judgment for its costs and disbursements and in its affidavit sets forth various items of costs and disbursements. The trial court denied those items which could not be granted under the most liberal interpretation, but did grant such items as trial before issue, $10.00; sheriff's fee for serving findings, conclusions and decisions, $3.20; transcript cost of proceedings, $59.50; and certified copy of order from the clerk of courts, $1.00; all totaling $73.70.

■ The authority to award costs can be found in SDCL 15–17–1 which provides that "in civil actions and in certiorari, mandamus and prohibition proceedings, there may be allowed to the prevailing party certain sums by way of indemnity for his expenses in the action or proceeding, which allowances are termed 'costs.'" In *Buckingham Transp. Co. of Colorado, Inc. v. Black Hills Transp. Co.*, 66 S.D. 433, 285 N.W. 300, we stated:

> "Costs, as such, were unknown to the common law, and the courts are without inherent power to tax costs. One claiming the right to costs must be able to point to a specific statute authorizing the award."

Generally, there is no authority to tax costs in an administrative proceeding. In *Buckingham*, the Supreme Court had assessed costs against the respondent in reversing a circuit court's affirmance of the Railroad Commission's decision. On a motion to modify the judgment, the court held that it was without authority and stated that an administrative proceeding was not a civil action nor a special proceeding in certiorari, mandamus or prohibition.

■ The only statute * existing at the time involved herein which allowed the taxing of costs in administrative proceedings is when a party unreasonably refuses to stipulate to limit the record. SDCL 1–26–33.

Notice should be taken of SDCL 1–26–22 which provides:

"Whenever a party requests in writing that oral proceedings be transcribed, a verbatim record of all proceedings and testimony shall be kept by the agency. Unless otherwise provided by law *the agency shall not be required to transcribe the record unless the party tenders and pays the reasonable cost thereof.*" (emphasis supplied)

A careful review of the record discloses no such request in writing either prior to the time of hearing on said matter or to the time of filing the appeal. The record does not disclose who ordered and paid for the transcript except that which may be inferred from the motion to tax costs.

By virtue of SDCL 1–26–36, the court is afforded discretion to either remand the case to the agency for further proceedings or to retain jurisdiction and finally dispose of the case by reversing the decision or modifying the final order or other action of the agency.

■ In deciding whether to modify the order or to remand the matter to the agency, the court must look to the circumstances and facts of each case. In this case, the more serious charges against the appellant Dail are not supported by substantial evidence, and the one that is supported by the evidence appears to be only a technical violation. The Commission imposed its sanction upon the basis of all the violations and should be given the opportunity to fulfill its full duty—that duty being to impose a penalty consistent with the appellant's violation.

The judgment of the trial court affirming the decision of the Real Estate Commission is affirmed as reflected herein; the trial court is reversed as to the taxation of costs; the order of suspension is vacated and the case is remanded to the agency for imposition of sanctions commensurate with the violation and consistent with this opinion.

All the Justices concur.

CHRISTENSEN, Circuit Judge, sitting for ZASTROW, Justice, disqualified.

---

* Note should be taken that SDCL 1–26–32, enacted by Ch. 17, § 7, S.L. 1975, allows the taxation of costs to indemnify the State or agency or any person from loss, damage, or costs from a further stay of proceedings.